JOHN S. KEDROVSKY, as Delegate of the Holy Synod of the Russian Orthodox Greek Catholic Church, and as Archbishop of the Diocese of North America and the Aleutian Islands of Said Church, and ARCHBISHOP AND CONSISTORY OF THE RUSSIAN ORTHODOX GREEK CATHOLIC CHURCH, Appellants, *v.* PLATON ROJDESVENSKY and Another, Respondents.

First Department, November 27, 1925.

Religious corporations — action to determine that defendant is not Archbishop of Diocese of North America of Russian Orthodox Greek Catholic Church and to prevent excluding plaintiff from premises — defendant's right as Archbishop is based on oral appointment by Patriarch — alleged appointment was as personal representative of Patriarch — oral appointment not valid under enactments of church — Patriarch had no power to appoint defendant Archbishop — power rests in Holy Synod — recognition of defendant as Archbishop by persons and bodies not possessing power of appointment does not prove appointment — plaintiff's appointment was valid — injunction granted.

In an action to determine that the defendant is not the Archbishop of the Diocese of North America and the Aleutian Islands of the Russian Orthodox Greek Catholic Church and to restrain the defendant, who claims to be Archbishop, from excluding the plaintiff from the church premises, the evidence establishes that the defendant's right and claim to the title or office of Archbishop is based upon an oral appointment by the Patriarch as a personal representative of the Patriarch. The defendant is not legally the Archbishop, since the Patriarch did not have power under the circumstances of the alleged appointment to appoint an Archbishop, and furthermore, an oral appointment is not valid under the enactments of the church. The power to appoint an Archbishop, except in certain cases of which this is not one, rests in the Holy Synod.

Recognition of defendant as the Archbishop by various persons and bodies who did not have authority to appoint is not proved by defendant's authority to act as Archbishop.

The appointment of the plaintiff as Archbishop by the authority of the second so-called Sobor, which is an Ecumenical Council of the church, was valid, since it appears that this Sobor was legally convoked and held, and acted *de facto* at least, upon the administration of the affairs of the church, and was recognized by church authorities as having been validly convoked.

Accordingly, since the plaintiff was validly and legally designated and appointed as Archbishop, he is entitled to a determination to that effect and to an injunction forbidding his being excluded from the church premises and restraining the defendants from further occupying the premises and from excluding the plaintiff therefrom.

MARTIN, J., dissents, with memorandum.

APPEAL by the plaintiffs, John S. Kedrovsky and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 19th day of January, 1925, upon the decision of the court rendered after a trial at the New York Special Term.

*Ralph M. Frink,* for the appellants.

*Thomas H. Mahony,* for the respondents.

MCAVOY, J.:

The plaintiffs are the individual Kedrovsky, named as delegate of the Holy Synod of the Russian Orthodox Greek Catholic Church and as Archbishop of the Diocese of North America and Aleutian Islands, and a corporation known as the Archbishop and Consistory of the Russian Orthodox Greek Catholic Church. Judgment was denied plaintiffs and granted to defendants by the learned court at Special Term in an action in which plaintiffs sought to prevent the defendants from occupying the Cathedral of St. Nicholas in New York, because it was alleged that the defendants were not the Archbishop and Dean of this Russian Orthodox Greek Catholic Church, as they asserted, and were in their occupancy diverting the property of the church from the trust to which it was subject, to wit, the occupancy by the accredited Archbishop of the North American Diocese of the Russian Orthodox Church and the Dean of the Cathedral. It was designed to establish that defendant Rojdesvensky is not the Archbishop and to forbid the excluding from the premises of Kedrovsky as the Archbishop.

The complaint takes the form of an action for the enforcement of the trust upon the real property occupied by the defendants. Defendant Rojdesvensky has a counterclaim in which he sets forth that he is the " ruling Bishop " and Kedrovsky is not the Archbishop and that Kedrovsky is interfering with the affairs of the diocese and its properties and diverting the properties from their uses for the Russian Orthodox Church, and he asks for an injunction restraining plaintiffs from interfering with the property or affairs

of the diocese or with him, Rojdesvensky, in the exercise of his ecclesiastical office. The injunction granted by the learned court at Special Term forbids all interference with Rojdesvensky's ecclesiastical office and forbids Kedrovsky from holding himself out as the Archbishop of the North American Diocese of the Russian Orthodox Greek Catholic Church.

The plaintiffs assert that the undisputed facts show that defendant Rojdesvensky is not the Archbishop. In effect, they say that Rojdesvensky entered the premises of the Russian Cathedral of St. Nicholas as a guest and secured what he calls an oral appointment as the personal representative of the Patriarch, the presiding authority of the Supreme Church Administration in Moscow. This, it is asserted, is neither the same thing as an archbishop's appointment nor superior thereto. It is said that the Patriarch having no authority to appoint an archbishop, could not designate the defendant, and that in any event an oral appointment under the canons of the Church is void. There is a confirmatory letter purporting to sustain this oral appointment from the ex-Patriarch Tikhon, which plaintiffs assert is obviously forged. The plaintiffs claim too that it is established that the ex-Patriarch has repudiated Rojdesvensky, and that he was excommunicated by the General Council or Sobor of the church in 1923.

The decision at Special Term was, apparently, not made on any theory of deciding the right to administer this trust as between these two ecclesiastics. The opinion recites that since the fact of possession raises the presumption of right to possess, the burden of showing a superior right is thrown on the plaintiffs, and if their title is defective, the court will not interfere with the existing possession. The action is not for ejectment and this ruling decides nothing with respect to the title or office of archbishop, which is the controversy between the respective parties and a determination of which will conclude the question of a diversion of the trust. There is no finding as to how the defendant was appointed archbishop; by whom; by what document or at what particular time, excepting that it is found generally that he was so appointed in 1922. Defendant Rojdesvensky was originally the Metropolitan (archbishop) of Kherson and Odessa in Russia and at one time was the archbishop of the diocese of North America. He came here in 1920 and again in 1921 and has remained here since, except for a short period. He was a guest at the archbishop's residence of the former acting archbishop Alexander Nemolovsky. Shortly afterwards he asserted that he was ruling bishop. The version of his oral appointment as personal representative of the Patriarch is given by one Colton of the International Committee of the Young Men's Christian

Associations.  He says that he was in Moscow in the spring of 1922, and he received two cablegrams from friends of Rojdesvensky who asked him to present a request to the Patriarch Tikhon to appoint Rojdesvensky his "personal representative with full powers in America." This appointment, if made by Tikhon, would not carry with it the powers or duties of an archbishop, and the canons of the Russian Church show that a personal representative of the Patriarch would not be the equivalent or superior of an archbishop.  This was admitted by the defendants' witnesses. The Patriarch had no authority to appoint an archbishop under the canons or enactments as they are called.  The witness Colton says that he presented this request to the Patriarch and received a favorable reply but that the Patriarch said instead of making an order he would make a recommendation which Colton should communicate to a council of refugee bishops abroad who were, apparently, handling the foreign affairs of the church.  This council upon the receipt of Colton's message, decided that the expression of a recommendation of Rojdesvensky was not official and refused to give Rojdesvensky the order which he requested.

There is nothing in the Colton letter nor the action of this council of refugee bishops which shows any appointment of Rojdesvensky as an archbishop.

A Russian named Pashkovsky, whom Rojdesvensky has made a bishop, says that he acted as interpreter at Mr. Colton's interview with the Patriarch.  Pashkovsky says that what Colton said was a recommendation was also an appointment, but even if it be an appointment, it was as representative of the Patriarch and not as archbishop.  Pashkovsky says that on May 3, 1922, the Patriarch issued a direction that Rojdesvensky assume the administration of the North American diocese in view of the disorders.  He says, however, that Rojdesvensky was appointed archbishop, but he admits that the special appointment to assume the administration of affairs is different from that of an appointment to an archbishopric.  Pashkovsky stated in an affidavit that the message presented to the Patriarch asked to have Rojdesvensky appointed as ruling archbishop of the North American archdiocese; but this is contradicted by the request itself, which asked for a personal representative of the Patriarch.  Pashkovsky, however, admitted that the Patriarch had no authority to appoint an archbishop, except in an instance which does not appear here to apply, and although his affidavit stated that the Patriarch appointed Rojdesvensky to be his personal representative in North America and to rule over the entire Russian Orthodox Greek Church in North America as superior to all other bishops and archbishops therein,

nothing has yet been found that appoints him archbishop. Pashkovsky also stated that the Patriarch said he would appoint Rojdesvensky in place of Archbishop Alexander; and that he would give papers for this appointment; but in the three years which have elapsed since then, no papers have arrived. It is apparent that Patriarch Tikhon had no power to appoint an archbishop. The power to make such an appointment was in the Holy Synod of which he was the president, the only authority for the Patriarch to act alone being given in article 20 of the enactments, which is a veto appointment after a decision by the Holy Synod. Besides, this evidence of oral appointments would be of no avail against the rules of the Russian Church which forbid a bishop to exercise authority without written credentials. This ecclesiastical rule has existed from the early Christian era. (Index Canonum — 33d Apostolic Canon.)

Except for the alleged forged letter of September 20, 1923, Pashkovsky's testimony is the only evidence that Rojdesvensky has any title to any office. Since the Patriarch had no power to appoint an archbishop, and since in any event an oral appointment would be invalid, this title does not seem to be well proven, nor is the claim of recognition by various persons who have no right of appointment any proof of authority to act as archbishop in this diocese, and thus to administer the trust in the real property herein involved. None of the bodies purporting to recognize him as an archbishop are shown to have had any authority to appoint an archbishop. The convention in Detroit of April, 1924, purported to secede from the Russian Church and to make Rojdesvensky archbishop of an independent church.

The letter of September 20, 1923, purporting to be signed by the Patriarch Tikhon, even if it be not spurious, does not pretend to be an appointment of defendant as Archbishop of North America, and even if it does, the Patriarch had no power to appoint archbishops, even if the office of Patriarch existed. The office, however, was abolished at the time of the date of this alleged appointment. It is probable that the Patriarch did not make a direct appointment because of lack of power. On the other hand, Kedrovsky showed his authority from the so-called Sobor, which is an Ecumenical Council of the Church. The learned court at Special Term held this Sobor invalid on the ground that it departed from the true Russian Orthodox faith. The validity of Kedrovsky's appointment really depends upon the validity of the second Sobor as it is called. There was testimony that the Sobor was properly called in accordance with a resolution in the first Sobor, called in 1917 during the Kerensky *régime* and admittedly valid, providing for a

call of a Sobor not later than 1923. There was proof that the Patriarch had sanctioned it and its legality was never questioned by anything that Tikhon, the Patriarch, did. Dr. Hartman, a Methodist clergyman, testifies that the Patriarch authorized a committee or council to proceed with the work of convoking this convention acting as *locum tenens,* the convention was convened by the Patriarch acting through the council, and also by the council which called itself in its own convocation the Supreme Church Administration. This testimony of Dr. Hartman was based upon the doctor's investigation in Moscow before and during the second Sobor, and he attended this Council or Sobor as a representative of the Methodist bishops. It is not disputed that the Supreme Church Administration was the *de facto* administration of the Russian Church. Dr. Hartman stated that this was so and he could state it from actual observation.

The evidence seems sufficient to indicate that this Sobor was legally convoked, and held and acted *de facto* at least upon the administration of the affairs of this church. One Bogan, a native American priest, stated that the Ecumenical Patriarch of Constantinople recognizes the validity of the 1923 Sobor which gives ground for finding for its validity.

Plaintiff Kedrovsky's appointment as Archbishop and delegate of the Holy Synod is evidenced, not only by his oral testimony of the things done in Moscow, but by complete and convincing documents. Exhibit 11 is a certified copy of the minutes of the meeting of the Holy Synod at which it was decided to appoint him. The resolutions make it plain that his appointment would supersede any which Rojdesvensky might have had, by reciting that Rojdesvensky had never been appointed and was simply a usurper. Exhibit 12 is the formal " Gramata " or certificate of title to the office of Archbishop and the title of Metropolitan. It was orally testified that regular consecration services were held. The power of attorney appointing Archbishop Kedrovsky as delegate of the Holy Synod with full power, including authority to occupy and administer the premises mentioned in the complaint, was signed and acknowledged before Dr. J. F. Hecker, who was appointed a commissioner for this purpose by order of the New York Supreme Court sitting in New York county. As to Kedrovsky's authorizations from the Holy Synod there is no dispute whatever.

The Holy Synod has authority to appoint an Archbishop for North America and a delegate of the Holy Synod. The enactments of the 1917-1918 Sobor enumerate under the heading " jurisdiction of the Sacred Synod," " (2) Confirmation of bishops elected to the dioceses in their office, their appointment in proper cases and their

retirements." Under the heading " Diocesan Bishops," it is provided:

" In extraordinary and exceptional cases, if the welfare of the church so requires, bishops may be appointed and transferred by the Supreme Church Authority.

" In a diocese where a large missionary activity shall be developed, and where many non-Russians are living, the diocesan bishop shall be elected among the candidates who have experience in missionary work; otherwise bishops to such dioceses may be appointed by the Supreme Church Authority.

" Bishops to the foreign missions shall be appointed by the sacred Synod."

The second Sobor was convened with a jurisdictional basis in the church statute and it is entitled because of this to the presumption of regularity. There was besides, this secondary proof of its official status. All the procedural steps taken by the Patriarch and the Supreme Church Administration were shown to be *de facto* regular and this latter body had both the Patriarch's approval and authority of its own to summon the Sobor.

There was no evidence of failure to give due notice and all interested parties had actual knowledge so that they could have attended the Sobor. Affirmative evidence shows that the election of delegates among 80,000,000 orthodox people over all Russia and Siberia was free from outside interference. The other orthodox Greek Catholic churches as represented by their Patriarchs recognize the Sobor's regularity. To set aside the actions of the second Sobor under these conditions in favor of the shadowy claim of the defendant Rojdesvensky, on the theory that the doctrinal necessities of the Russian Church require it, would put a civil tribunal of New York in ascendancy over the ecclesiastical authority in the decision of a purely ecclesiastical question with which it can have no concern.

We hold that the second Sobor being in any event *de facto* valid, and Kedrovsky being the Archbishop appointed pursuant to its authority and entitled to occupy the premises in question, an injunction should issue forbidding his being excluded therefrom, and restraining the defendant Rojdesvensky from further occupying the premises, and restraining the defendant Turkevich similarly, and restraining both defendants from excluding the plaintiff Kedrovsky therefrom.

The judgment of the Special Term should be reversed and judgment ordered in accordance with this opinion.

CLARKE, P. J., DOWLING and MERRELL, JJ., concur; MARTIN, J., dissents.

Martin, J. (dissenting):

This is a suit in equity.    The plaintiffs seek to have the defendants restrained from diverting trust property from the purposes for which it was placed in trust, that is, for use by the Russian Orthodox Greek Catholic Church of North America.    Since the trust was created it has been and now is so used.

I am of the opinion that the plaintiff Kedrovsky is seeking to divert this property from the purpose for which it was intended under the trust.    He is the servant of a group who have reached a position of power in their church organization through the revolution in Russia and by what appear to be questionable means.    It is extraordinary that they should have the aid of a court of equity to displace those who are administering the trust strictly as it was intended to be administered.

I, therefore, dissent and vote for affirmance.

Judgment reversed and judgment ordered in accordance with opinion.    Settle order on notice.